IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff in | ) |
| Interpleader, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| MARC JOHNSON, | ) |
| | ) Case No. 23-cv-2709-TMP |
| Defendant in | ) |
| Interpleader, | ) |
| | ) |
| and | ) |
| | ) |
| XPO LOGISTICS, aka GXO, | ) |
| | ) |
| Defendant in | ) |
| Interpleader. | ) |
| | ) |

---

ORDER DENYING DEFENDANT JOHNSON'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT XPO'S MOTION TO DISMISS

---

Before the court are defendant in interpleader Marc Johnson's Motion for Summary Judgment and defendant in interpleader XPO Logistics's ("XPO") Motion to Dismiss, both filed on March 25, 2024. (ECF Nos. 30, 31.) XPO filed its response in opposition to Johnson's motion on April 22, 2024, and Johnson filed his response in opposition to XPO's motion that same day. (ECF Nos. 32, 33.) Both parties filed replies in support of their respective motions on May 6, 2024. (ECF Nos. 35, 36.) On May 7, 2024, the court

granted Johnson leave to amend his Motion for Summary Judgment. (ECF Nos. 34, 37.) Johnson filed an amended memorandum in support of his motion on May 28, 2024. (ECF No. 38.)

For the reasons set forth below, Johnson's Motion for Summary Judgment and XPO's Motion to Dismiss are DENIED.[1]

## I. BACKGROUND

### A. Johnson's Criminal Case

The instant *in rem* interpleader action stems from the 2021 federal criminal prosecution of Johnson in the Western District of Tennessee. For nearly fifteen years, Johnson was employed by XPO, a logistics and shipping company, at its Memphis warehouse. (ECF Nos. 1 at PageID 2; 31-1 at PageID 552.) In December 2018, XPO "began experiencing an abnormally high financial loss due to missing product," which the company suspected was due to employee theft. (ECF No. 31-1 at PageID 552-53.) After reviewing security footage and other data from its Memphis facility, XPO identified Johnson, then an operations manager, as a suspect. (See id.) On December 20, 2018, Johnson was stopped while driving near his home as part of a "sting operation" in coordination with XPO. (Id. at PageID 547.) Police recovered two bags filled with approximately twenty iPhones each and $64,316 in cash from Johnson's vehicle. (ECF Nos. 1 at PageID 2; 30-6 at PageID 500.) On December 21, 2018,

---

[1]The parties consented to the jurisdiction of a United States magistrate judge on January 10, 2024. (ECF No. 11.)

an additional $304,500 was seized from a safe in Johnson's house. (ECF Nos. 1 at PageID 2; 31 at PageID 547.)  Both amounts were deposited into an account held by the United States Marshals Service. (Id.) The total value as of March 25, 2024, with interest, was $400,932.15. (ECF No. 31 at PageID 547.)

On June 27, 2019, Johnson was indicted by a federal grand jury with one count of theft from interstate or foreign shipment in violation of 18 U.S.C. § 659. (ECF No. 38 at PageID 620.) The indictment sought a judgment of $510,396, the alleged loss associated with Johnson's purported theft between December 18 and 20, 2018, of iPhones that XPO was shipping on behalf of Verizon Wireless. (Id.) The indictment also gave notice of the government's intent to forfeit the $368,816 in cash seized from Johnson's home and vehicle, which it believed were proceeds traceable to the alleged theft. (Id.; ECF No. 33 at PageID 581-82.) On October 16, 2019, Johnson pled guilty to Count I of the indictment but contested the government's criminal forfeiture allegations. (ECF No. 38 at PageID 621; ECF No. 28, United States v. Johnson, No. 2:19-cr-20163-MSN (W.D. Tenn. Oct. 16, 2019).) The parties agreed to address forfeiture at sentencing.[2] (Id.)

---

[2]Before the grand jury returned its indictment of Johnson, the United States filed a separate civil forfeiture action against the $368,816 seized from Johnson. (ECF No. 31-2 at PageID 558; see also ECF No. 1 at PageID 2.) The government moved to dismiss that action on March 27, 2024, after initiating the instant proceeding for interpleader. (ECF No. 54, United States v. $368,816.00 in

After delays from the COVID-19 pandemic, Johnson's first sentencing hearing was held on April 1, 2021, before District Judge Mark S. Norris. (ECF No. 38 at PageID 621.) There, the government presented testimony from XPO's Director of Security Thomas Nelson, along with other video and electronic evidence from XPO's Memphis warehouse. (Id.; ECF No. 31-1 at PageID 554-55; see generally, ECF No. 30-3 (April 1 hearing transcript).) Nelson testified that he believed Johnson had disabled XPO's alarm system on twenty-one days between November 2 and December 20, 2018, in order to steal thirty-nine duffel bags filled with iPhones. (ECF No. 31-1 at PageID 555-56.) Using "historical data," Nelson testified that approximately 727 phones valuing $973,000 were taken over this period, not including the forty iPhones recovered on the date of Johnson's arrest. (Id. at PageID 556.)

A second evidentiary hearing was held on April 5, 2021. (See generally ECF No. 30-4 (April 5 hearing transcript).) The government presented testimony from Sergeant Michael Gibbs, who participated in Johnson's arrest and the subsequent search of Johnson's vehicle and home. (ECF No. 38 at PageID.) Johnson then offered testimony from his wife, Darnise Johnson; former co-worker and XPO employee Marvin Jefferson; and Johnson himself. (ECF No. 38 at PageID 625-33.) Each defense witness testified regarding

---

United States Currency, No. 2:19-cv-02363-JTF-tmp (W.D. Tenn. Mar. 27, 2024).)

Johnson's gambling habit and his tendency to carry various betting-related papers and workbooks in a backpack. (See id.) Johnson also testified that he only stole a total of forty iPhones on December 20, 2018, not the nearly 730 phones Nelson estimated were taken between November 2 and December 20. (Id. at PageID 630-32; ECF No. 30-4 at PageID 384.) On April 7, 2021, Judge Norris heard argument from the parties before taking the matter under advisement. (ECF No. 38 at PageID 633-34; see generally, ECF No. 30-5 (April 7 hearing transcript).)

Judge Norris reconvened the sentencing proceedings on November 5, 2021, at which point he shared a "preliminary pronouncement" of the court's findings and conclusions. (ECF No. 30-6 at PageID 476.) Judge Norris found that Johnson had held and abused a fiduciary "position of trust" with XPO, which justified a two-level sentence enhancement under the federal sentencing guidelines. (Id. at PageID 473-74.) He noted that this fact was not contested by either party:

> Johnson admits that as operations manager, he held a position of trust, yet contends he stole only 40 iPhones valued at $53,960 on December 20th. The Government contends the Defendant held and abused a position of trust and is responsible for the theft of 727 iPhones valued at $1,026,000 from November 2nd through December 20th, 2018.

(Id. at PageID 498.) Judge Norris also found adequate proof to justify an enhancement under Section 2B1.1(b)(1)(H) of the guidelines. (Id. at PageID 503-04.) That section provides for a

- 5 -

14-level increase if the loss incurred from the commission of an offense is more than $550,000 but less than $1.5 million. (Id. at PageID 478; see also id. at PageID 503 ("[P]roof of XPO's deductive calculation referenced above establishes a loss of more than $550,000[.]").) In support of that enhancement, Judge Norris made several findings of fact:

> [T]he proof shows by a preponderance of the evidence that the Defendant devised and engaged in a scheme by which he concealed boxes containing high capacity iPhones among empty boxes he placed on pallets in the XPO warehouse, using pallet jacks he staged or positioned the pallets outside a door on the perimeter of XPO's human resources department. I'll refer to that as HR. His office was located elsewhere inside, but he used the HR area to access the warehouse without detection by use of his unique cyber key and personal code, which the proof showed enabled him to disable the alarm and pull boxes of phones off the pallet and through the perimeter door without detection.
>
> The Government established by a preponderance of the evidence that Defendant did so on December 18th, 19th and 20 of 2018, in order to transfer said phones into two bags he brought into HR empty and departed with full. The phones he took from the warehouse in the two bags he put into his Tahoe on December 20 were the same phones in his possession upon apprehension.
>
> Videos and still photos are inconclusive as to the actual contents of the bags with which Defendant came and left work, but they generally appear to the Court to be empty upon arrival and full upon departure. Defendant contends that the bags were filled with copies he made at work for his wife's classroom, together with gambling paraphernalia, such as books and his computer and the like. This included the two bags in Defendant's possession filled with 20 boxes of iPhones each upon Defendant's apprehension on December 20th of 2018.
>
> Although security cameras were positioned differently on the previous 18 days, rendering it impossible to see the

actual transfer of boxes into HR, the testimony of Mr.
Nelson and Officer Gibbs established that Defendant
otherwise moved boxes beginning in November in the same
manner he allegedly did on December 18, 19 and 20. The
Government adopts what the Court considers to be a
deductive calculation articulated by Mr. Nelson on
behalf of XPO. All told, the Government establishes by
a preponderance of the evidence through Mr. Nelson's
testimony that on 21 days between December——excuse me,
between November 2nd and December 20, 2018, Defendant
removed 39 bags containing a total of 727 iPhones valued
at $973,115.37, not including the 40 iPhones Defendant
admits he stole on December 20th, using the foregoing
methods.

. . .

Thus the intended loss was a grand total of $1,026,000,
and for these reasons, the Court finds this calculation
sufficiently exact to fall within the universe of
acceptable computations.

(Id. at PageID 499-501.) Shortly after making these findings,

however, Judge Norris acknowledged that Johnson was only charged

with theft during a much shorter period than that alleged by XPO:

Despite the foregoing, Defendant was not charged with
nor did he plead guilty to theft of phones on November
2nd through December 20, 2018. He was charged with theft
of phones from on or about December 18th, 2018 to
December 20, 2018, and that is all he pled to.

As to that charge, the proof establishes by a
preponderance of the evidence only the theft of the 40
iPhones in Defendant's possession upon his apprehension
on December 20th, 2018. Although his removal of the other
four bags, two on the 18th and two on the 19th was
identical to that on the 20th, and additional phones
were more probably than not in those four bags, the
Government has not established by a preponderance of the
evidence the quantity or value of those phones on
December 18th and 19th, and it would be speculation on
the Court's part to do so.

(Id. at PageID 502-03.)

- 7 -

Judge Norris next announced his preliminary finding that the government was not entitled to criminal forfeiture under 21 U.S.C. § 853. (ECF No. 30-6 at PageID 504.) Citing United States v. Bohn, 281 F. App'x 430 (6th Cir. 2008), he explained,

> here the Court finds that the Government has not identified such a nexus between the $368,816 in cash [seized from Johnson] and the conduct charged in Count 1. Specifically, the Court will not presume that the cash in the safe nor in the vehicle came from profits derived from the sale of stolen phones.
>
> No evidence has been presented that Defendant sold the phones for any amount of cash, let alone an exact sum of $368,816 or that he stored such cash if therefrom acquired in his personal safe or vehicle. The Court finds that making such sweeping assumptions with such little evidence would be a bridge too far. After all, the Supreme Court has made clear in Honeycutt versus United States that forfeiture to Section 853 is limited to property that Defendant himself actually acquired as a result of the crime.
>
> Here, the Court is not convinced by a preponderance of the evidence that the $368,816 in cash identified for forfeiture was actually acquired as a result of the stolen phones[.]

(ECF No. 30-6 at PageID 505-06.) Judge Norris nevertheless reserved his ruling on the government's motion for preliminary forfeiture, allowing the parties time to submit additional briefing. (Id. at PageID 514-15.)

Lastly, as to the issue of restitution, Judge Norris found that there were grounds to compensate XPO for its loss. He indicated that the $1,026,000 "intended loss" figure considered for Johnson's sentence enhancement also provided a basis for the

restitution award. (See ECF No. 30-6 at PageID 501, 507.) In sum, Judge Norris imposed a sentence of 24 months followed by two years of supervised release, ordered restitution in the amount of $973,115.37,[3] and reserved the question of forfeiture for a later hearing. (Id. at PageID 519-20.)

Johnson's fifth and final sentencing hearing was held two weeks later, on November 19, 2021. (See ECF No. 38 at PageID 637-38; see generally ECF No. 30-7 (November 19 hearing transcript).) There, Judge Norris announced a correction to his prior sentence, explaining that "without more specificity, it would be speculative for [the court] to impose restitution under these circumstances." (ECF No. 30-7 at PageID 532.) Judge Norris explained,

> [t]he challenge . . . is when it gets to restitution for a conviction on three particular days without knowing more or sufficiently what was in the backpacks on two of those three days, that it, in the Court's opinion, would be speculative under the facts of this case for me to impose restitution in -- of a particular amount. Even if the Court were able to find that the backpacks contained some phones, I wouldn't know how many. I wouldn't know exactly what the dollar amount to be associated with those would be. And I just don't. The fact that two backpacks containing a total of 40 iPhones on December 20th were seized, were apprehended with the Defendant at that time gives us the 53,000 and some additional dollar amount that we've discussed, but in that case the phones were recovered, and so the victim did not have that loss.
>
> . . .

---

[3]Although Judge Norris initially ordered restitution in the amount of $1,026,826.24, he quickly clarified that this number was inclusive of the forty iPhones recovered from Johnson, making the correct amount $973,115. (ECF No. 30-6 at PageID 519-20.)

> [T]he basic -- the concept is that I can't speculate in
> including a restitutionary sentence against this
> Defendant. And looking back at the facts as best we have
> them and the law in the Sixth Circuit, it's just
> inappropriate for this Court to impose a specific amount
> without sufficient proof.

(Id. at PageID 537-38.) Judge Norris also noted that "[u]nder the

Mandatory Victims Restitution Act, . . . the Court orders

restitution when appropriate, and it may very well be appropriate

in this case, but sentencing is not to be used for the

determination of facts and issues better suited to civil

proceedings." (Id. at PageID 533.)

Counsel for the government subsequently raised a "point of

clarification" regarding Judge Norris's underlying findings of

fact. (Id. at PageID 540.) Even if the court declined to impose

restitution, the government argued, the court "already ha[d] made

a factual finding that the Defendant was responsible for taking

cell phones on [December 18 and December 19] as well as the prior

dates through . . . November 2nd." (Id. at 539-40.) The following

exchange ensued:

> **The COURT:** Well, [the government] has been established
> by a preponderance of the evidence that the Defendant
> was taking cell phones, and he specifically, of course,
> pled guilty to doing so on December 18th, 19th and 20th.
> I did find for purposes of relevant conduct in applying
> the enhancement that the calculations and tabulations
> and the deductive calculation by XPO Logistics was --
> would show the 750 percent increase in shrinkage, the
> number of times the data proved the Defendant accessed
> certain facilities and the like, bring the case and these
> facts having been established, that this is what
> happened between November 2nd and December 20th, coupled

with the fact that upon Mr. Johnson's termination from employment, the so-called shrinkage or loss level resumed normal levels, and that is all specifically set forth in the transcript of November 5th.

I said, further, so what can be proven with sufficiency on a particular day or series of days may be different than what the proof shows on a deductive calculation over a longer period. The Court can look at the longer period for relevant conduct, but if the indictment is arguably limited to three days in December, which it is, that's what was charged, and that's what he pled to. He didn't plead guilty to this theft over a two-month period. So I think the record's sufficiently clear.

**[GOVERNMENT COUNSEL] MR. BIGGERS:** I just want to make sure . . . that I'm clear in my argument to the Court.

**THE COURT:** Yes, sir.

**MR. BIGGERS:** [There was] [s]ome discussion -- some argument by Opposing Counsel and some discussion by the Court that the Court would be speculating as to what was in the bags. The Government submits that the Court has already determined what was in the bags from November 2nd through December 20th. That was cell phones. However, because the Court cannot determine on each specific date how much -- how many cell phones and what types of cell phones were in the bag, therefore the Court cannot attribute a restitution amount for not only December 18th and 19th but legally because that is not the -- those are outside of those dates, no other dates are charged in the indictment for which the Defendant's pled to. That that is why the Court is not imposing restitution for that full amount, not because the Court does not -- did not find by a preponderance of the evidence that Defendant took cell phones on that day.

**THE COURT:** Yeah, that's correct.

(Id. at PageID 541-43.) Shortly thereafter, Judge Norris concluded the hearing, noting the government's objection to "the reasons [for] the restitution amount[.]" (Id. at PageID 543-44.) The court's final judgment, entered later that day, did not order

forfeiture or restitution. (ECF No. 38 at PageID 638; ECF No. 82, <u>United States v. Johnson</u>, No. 2:19-cr-20163-MSN (W.D. Tenn. Nov. 19, 2021).)

**B.  Procedural History**

Nearly two years after Johnson was sentenced, the United States initiated this interpleader action on November 6, 2023. (ECF No. 1.) According to the government, "[g]iven [Johnson and XPO's] competing claims in 2:19cv2363 for the funds seized from Johnson's vehicle and house, the United States is not in the best position to determine which of the Defendants in Interpleader are entitled to the seized funds." (<u>Id.</u> at PageID 2.) The parties consented to the undersigned's jurisdiction on January 10, 2024, and the undersigned granted the United States' request for interpleader relief on January 12, 2024. (ECF Nos. 11, 12.)

Johnson and XPO filed the instant Motion for Summary Judgment and Motion to Dismiss, respectively, on March 25, 2024.[4] (ECF Nos. 30, 31.) In his motion, Johnson invokes the doctrines of collateral estoppel and res judicata. (ECF No. 38 at PageID 638-41.) He argues that Judge Norris's denial of forfeiture and restitution in

---

[4]Johnson later sought leave to file an amended version of his motion, which the court granted on May 7, 2024. (ECF Nos. 34, 37.) For the above facts and foregoing analysis, the court has relied on Johnson's arguments as presented in his Amended Motion for Summary Judgment, (ECF No. 38), supplemented with Johnson's exhibits from his original motion, (ECF Nos. 30-2, 30-3, 30-4, 30-5, 30-6, 30-7).

Johnson's criminal case should bar relitigation of those issues and thus entitle Johnson to judgment as a matter of law. (See id.) In its motion to dismiss, XPO likewise invokes collateral estoppel, arguing that Johnson should instead be barred from relitigating certain findings of fact from his sentencing hearings. (ECF No. 31-1 at PageID 560-61.) Because Johnson admitted to stealing from XPO, the company also separately asserts that Johnson should be precluded "from any relief whatsoever." (Id. at PageID 564.) XPO moves the court to impose a constructive trust and equitable lien against the contested rem in favor of XPO. (Id. at PageID 561-63.)

## II.  ANALYSIS

### A.  Johnson's Motion for Summary Judgment

#### 1.  Standard of Review

Federal Rule of Civil Procedure 56 provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden to "demonstrate the absence of a genuine [dispute] of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the

nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). Rule 56(c) provides that a party must support an assertion of fact by citing to materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials[,]" or a party must show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When analyzing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. Huckaby v. Priest, 636 F.3d 211, 216 (6th Cir. 2011) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In doing so, the court may not make credibility determinations or weigh the evidence. Jordan v. Kohl's Dep't Stores, Inc., 490 F. App'x 738, 741 (6th Cir. 2012) (citing Anderson, 477 U.S. at 255). Rather, it must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Block v. Meharry Med. Coll., 723 F. App'x 273, 277 (6th Cir. 2018) (quoting Anderson, 477 U.S. at 251-52).

2.   Collateral Estoppel

Johnson's first argument in support of his summary judgment motion is that "[t]his *in rem* civil forfeiture action is barred pursuant to issue preclusion: collateral estoppel." (ECF No. 38 at PageID 639.) "Issue preclusion, or collateral estoppel, bars the relitigation of issues that have already been actually litigated and lost in a prior action." Cobbs v. Katona, 8 F. App'x 437, 438 (6th Cir. 2001) (citations omitted). Trial courts have "'broad discretion' to determine whether to apply collateral estoppel" in a particular case. In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig., 54 F.4th 912, 921 (6th Cir. 2022) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979)); see also Bowen ex rel. Doe v. Arnold, 502 S.W.3d 102, 116 (Tenn. 2016) ("[C]ourts have considerable discretion to allow for relitigation if the circumstances . . . convince the court that relitigation is warranted.").

"[F]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."[5] Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC, 46

---

[5]Although the parties do not challenge diversity of citizenship in their briefs, the court notes that 28 U.S.C. § 1335——one of the jurisdictional bases for this statutory interpleader action claimed by the United States, (ECF No. 1 at PageID 1)——requires "[t]wo or more adverse claimants, of diverse citizenship[.]" 28 U.S.C. § 1335(a)(1). The claimants here are Johnson, a citizen of Tennessee, and XPO, a corporation that, according to public records filed with the U.S. Securities and Exchange Commission, is

F.4th 454, 458 (6th Cir. 2022) (quoting <u>Taylor v. Sturgell</u>, 553 U.S. 880, 891 n.4 (2008)). Under Tennessee law, "[t]o prevail on a claim of collateral estoppel, a party must establish:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, . . . and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

<u>Bowen</u>, 502 S.W.3d at 107 (quoting <u>Mullins v. State</u>, 294 S.W.3d 529, 535 (Tenn. 2009)).

Tennessee courts previously recognized a fourth element, which required that "the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding." <u>See id.</u> (quoting <u>Mullins</u>, 294 S.W.3d at 535.) However, the Tennessee Supreme Court in <u>Bowen ex rel. Doe v. Arnold</u> appeared to abandon the strict application of this requirement. <u>See id.</u> at 115-16 ("[W]e conclude that the traditional mutuality requirement has outlived its usefulness and should be abandoned in Tennessee for both offensive and defensive collateral estoppel."). Instead,

---

incorporated in Delaware and headquartered in Greenwich, Connecticut. <u>See</u> <u>https://www.sec.gov/ix?doc=/Archives/edgar/data/0001166003/000110465925020293/tm258128d1_8k.htm</u> (last accessed Mar. 29, 2025; <u>see also</u> <u>Arvest Bank v. Byrd</u>, 814 F. Supp. 2d 775, 787 n.4 (W.D. Tenn. 2011) (citations omitted) (citing several cases for the proposition that the court may judicially notice public records when evaluating diversity of citizenship).

the Court instructed that, when deciding whether to apply collateral estoppel, "courts should be guided by the general approach set out in section 29 of the Restatement (Second) of Judgments." Id. at 115. That guidance "generally precludes relitigation of issues decided in prior lawsuits unless the party against whom collateral estoppel is asserted lacked a full and fair opportunity to litigate the issue in the first action or some other circumstance justifies affording that party an opportunity to relitigate the issue." Id. at 116. The Restatement offers additional circumstances "to which considerations should be given" in deciding whether to apply collateral estoppel, including:

> (1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
>
> (2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined; [and] . . .
>
> (5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding[.]

Restatement (Second) of Judgments § 29 (Am. L. Inst. 1982) (Oct. 2024 Update).

While Johnson's motion incorrectly relies on the Sixth Circuit's test for collateral estoppel, his arguments remain relevant under Tennessee's analogous standard. Johnson first

- 17 -

argues that because "the prior criminal proceeding specifically addressed forfeiture[,] which is the subject-matter of the [instant] *in rem* civil forfeiture action," the issues in the current and prior proceedings are "identical." (ECF No. 38 at PageID 639.) Next, he asserts that "in the criminal proceedings, the parties thoroughly litigated the forfeiture issue," with Judge Norris placing "no limitations on the parties' evidence or proof in the matter." (Id.) Lastly, Johnson argues that "Fed. R. Crim. P. 32.2(b)(1)(A) and (B) and (b)(2)(A) made forfeiture critical and a necessary part of Judge Norris's decision in the criminal proceedings"; accordingly, Judge Norris's finding "that the government failed to prove a nexus between the money seized and the criminal activity" should preclude relitigation of the forfeiture issue. (Id. at PageID 639-40.)

XPO offers two arguments in response. It first contends that XPO was not a party to the criminal case and therefore "never had a full and fair opportunity to address its entire claim to the funds at issue." (ECF No. 33 at PageID 589.) Second, XPO asserts that "the criminal court deferred the issue of forfeiture and/or the return of the funds," recognizing that "the issues of forfeiture and restitution were better left to civil proceedings." (Id.) According to XPO, "the Court noted that it was limited by the facts pled in the indictment——specifically the indictment's limitation to a three-day period." (Id.) Thus, the issues for which

- 18 -

Johnson now seeks application of collateral estoppel "have not been actually litigated or actually resolved." (Id. at PageID 590.)

The court agrees with XPO. It is true that, because the United States pursued forfeiture in Johnson's criminal proceeding, Judge Norris was obligated to "determine what property [was] subject to forfeiture under the applicable statute." See Fed. R. Crim. P. 32.2(b)(1)(A). However, the court is not convinced that Judge Norris's decision of whether to impose criminal forfeiture is "identical" to the issue at the heart of this interpleader action. In Johnson's criminal prosecution, Judge Norris was charged with deciding "whether the government ha[d] established the requisite nexus between the property *and the offense*" with which Johnson was charged. See Fed. R. Crim. P. 32.2(b)(1)(A) (emphasis added); (see also ECF No. 30-6 at PageID 505 ("[T]he Government has not identified such a nexus between the $368,816 in cash and the conduct charged in Count I.").) As Judge Norris acknowledged, that determination was limited by the specific dates identified in Johnson's indictment. (See ECF No. 30-6 at 502 ("[Johnson] was charged with theft of phones from on or about December 18th, 2018 to December 20, 2018, and that is all he pled to.").) In contrast, the purpose of a civil interpleader action is to afford interested parties the opportunity "to adjudicate fully and finally all disputes arising out of claims to a fund." United States v. High Tech. Prods., Inc., 497 F.3d 637, 643 (6th Cir. 2007) (quoting

Francis I. du Pont & Co. v. Sheen, 324 F.2d 3, 6 (3d Cir. 1963));
see also United States v. One Assortment of 89 Firearms, 465 U.S.
354, 362 (1984) (citations omitted) ("It is clear that the
difference in the relative burdens of proof in the criminal and
civil actions precludes the application of the doctrine of
collateral estoppel.").

The court thus finds that applying collateral estoppel would
not only be "incompatible" with the purpose of this interpleader,
but doing so would also deprive XPO of "procedural opportunities
. . . not available in the first action." Restatement (Second) of
Judgments § 29. As XPO highlights in its response, "it was the
government and not XPO that chose to proceed on a one-count
indictment that only included the dates of December 18, 19, and
20." (ECF No. 33 at PageID 589.) Although XPO presumably provided
the government with considerable evidence to support Johnson's
criminal prosecution, that cooperation did not provide XPO with a
"full and fair opportunity to litigate" its claim to the seized
funds. Bowen, 502 S.W.3d at 116. Indeed, Judge Norris seemed to
foreshadow that XPO would have an opportunity to more thoroughly
litigate the issue in later proceedings:

> As the Court has pointed out, there is a pending civil
> matter in this case. All of the Court's rulings today
> and prior statements will be dissected in that
> proceeding to determine the actual civil forfeiture
> amount and how much the Defendant is owed to XPO
> Logistics, the victim in this case.

(ECF No. 30-7 at PageID 540.) Under these circumstances, the court
finds application of collateral estoppel is not warranted, and
Johnson is thus not entitled to summary judgment on that basis.

    3.   <u>Res Judicata</u>

    Second, Johnson argues that "the doctrine of res judicata
also bars this *in rem* civil action because Judge Norris issued a
final decision on the merits" regarding XPO's loss. (ECF No. 38 at
PageID 641.) According to Johnson, the Mandatory Victims
Restitution Act of 1996 compelled Judge Norris to order restitution
as part of Johnson's criminal sentence if he determined XPO was a
victim of Johnson's offense. (<u>Id.</u> at PageID 640.) Because "Judge
Norris denied the government's request for restitution," "XPO
[should be] estopped from asserting a loss in the *in rem* action."
(<u>Id.</u> at PageID 641.) In response, XPO again asserts that res
judicata is "not applicable as XPO was not a party to the [prior]
litigation." (ECF No. 33 at PageID 588.) It further argues that
Judge Norris's decision not to award criminal restitution cannot
preclude XPO from now pursuing a civil remedy in interpleader.
(<u>Id.</u> at PageID 590.)

    Res judicata, otherwise known as claim preclusion, "bars a
second suit between the same parties or their privies on the same
claim with respect to all issues which were, or could have been,
litigated in the former suit." <u>Elvis Presley Enters., Inc. v. City
of Memphis</u>, 620 S.W.3d 318, 323-24 (Tenn. 2021) (quoting <u>Jackson</u>

v. Smith, 387 S.W.3d 486, 491 (Tenn. 2012)). Under Tennessee law, "[t]he party asserting the defense of res judicata bears the burden of demonstrating:

> (1) that the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties or their privies were involved in both suits; (3) that the same claim or cause of action was asserted in both suits; and (4) that the underlying judgment was final and on the merits."

Regions Bank v. Prager, 625 S.W.3d 842, 847-48 (Tenn. 2021) (citations omitted).

The court finds that Johnson has not met this burden. As explained above, the "claim or cause of action" asserted in Johnson's criminal prosecution is distinct from that asserted in this interpleader suit. Although the government did pursue restitution as part of Johnson's criminal sentence, Judge Norris's restitution determination was limited to the specific dates and conduct charged in the indictment. Moreover, res judicata is not applicable because XPO was not a party to Johnson's criminal prosecution. Johnson does not dispute this fact, nor does he attempt to argue that XPO was a privy to the government in those proceedings. See Regions Bank, 625 S.W.3d at 847-48 (requiring that a party asserting res judicata demonstrate that "*the same parties or their privies* were involved in both suits" (emphasis added)). The court finds that Johnson has not met his burden of

demonstrating that res judicata applies, and accordingly denies his motion in full.

**B.    XPO's Motion to Dismiss**

    1.    <u>Standard of Review</u>

The court next addresses XPO's Motion to Dismiss. Although XPO invokes Federal Rule of Civil Procedure 12(b)(6), the court finds as an initial matter that the motion should be converted to a motion for summary judgment. "The federal rules require that if, in a 12(b)(6) motion to dismiss, 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." <u>Wysocki v. Int'l Bus. Mach. Corp.</u>, 607 F.3d 1102, 1104 (6th Cir. 2010) (quoting Fed. R. Civ. P. 12(d)). XPO (as well as Johnson) relies heavily on filings and transcripts from Johnson's criminal prosecution and related civil forfeiture action. (<u>See</u> ECF No. 31-1 at PageID 552-58 (citing to the record in <u>Johnson</u>, No. 2:19-cr-20163-MSN, and <u>United States v. $368,816.00</u>, No. 2:19-cv-02363-JTF-tmp).) The court will thus treat XPO's motion as one for summary judgment under Federal Rule of Civil Procedure 56, adopting the same standard of review applied to Johnson's motion outlined above. <u>See</u> <u>infra</u> Section II.A.1. In sum, XPO must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

2.  <u>Collateral Estoppel</u>

Like Johnson, XPO raises the doctrine of collateral estoppel
with respect to Johnson's criminal prosecution. In contrast to
Johnson's targeting of the broader "issue" of forfeiture, however,
XPO urges the court to preclude Johnson from contesting specific
findings of fact made during his sentencing hearings. (ECF No. 31
at PageID 549.) Those findings of fact, which XPO argues Judge
Norris made by a preponderance of the evidence, are:

1. Johnson was a fiduciary at XPO, who breached his duty
   as said fiduciary in a position of trust. . . .

2. Johnson, on 21 days between November 2nd and December
   20, 2018, removed 39 bags containing a total of 727
   iPhones valued at $973,115.37 (not including the 40
   iPhones Defendant admits he stole on December
   20th). . . .

3. The intended loss was a grant total of
   $1,026,000. . . . [and]

4. There is a direct correlation between the Defendant's
   use of the secure area in the HR office for access to
   the warehouse and the 750 percent increase in shrink,
   quote/unquote, or loss that XPO experienced in
   November and December 2018.

(ECF No. 31-1 at PageID 561.) XPO contends that Judge Norris made
these determinations despite "extensive sentencing hearing[s]" at
which Johnson was able to "litigat[e] various issues, including
the temporal scope and extent of his theft from XPO." (<u>Id.</u>) In his
response, Johnson asserts that "the parties are in complete
agreement that this matter should be resolved by collateral
estoppel." (ECF No. 32 at PageID 577.) However, Johnson argues

that XPO's motion is nevertheless "wholly misplaced because Judge Norris not only found the government failed to meet its burden to prove a loss . . . , but Judge Norris's Judgment in the case is also consistent with his ruling not ordering Mr. Johnson to pay any restitution." (Id. at PageID 568.)

The court finds that XPO has not demonstrated that collateral estoppel should be applied. To be sure, Johnson, during his criminal case, may have had a more robust opportunity than XPO to litigate his claim to the contested funds. But as explained above, the broader scope of this action in interpleader, as compared to the limited scope of Johnson's criminal proceedings, weighs against application of the preclusion doctrine. See also Restatement (Second) of Judgments § 29 (instructing that courts may consider whether "[t]he prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action").

Moreover, the court is not convinced that the findings of fact XPO identifies for preclusion were final decisions on the merits. See Bowen, 502 S.W.3d at 107 ("[A] party must establish . . . (2) that the issue to be precluded was actually . . . decided on the merits in the earlier proceeding[.]"). While Judge Norris announced several findings of fact at the November 5 sentencing hearing, he later issued a correction to his preliminary sentence at the November 19 hearing. (ECF No. 30-7 at

PageID 532.) When counsel for the government attempted to clarify how this change affected Judge Norris's earlier findings of fact, Judge Norris responded,

> Well, it has been established by a preponderance of the evidence that the Defendant was taking cell phones, and he specifically, of course, pled guilty to doing so on December 18th, 19th and 20th. I did find for purposes of relevant conduct in applying the enhancement that the calculations and tabulations and the deductive calculation by XPO Logistics was -- would show the 750 percent increase in shrinkage, the number of times the data proved the Defendant accessed certain facilities and the like, bring the case and these facts having been established, that this is what happened between November 2nd and December 20th, coupled with the fact that upon Mr. Johnson's termination from employment, the so-called shrinkage or loss level resumed normal levels, and that is all specifically set forth in the transcript of November 5th.

(Id. at PageID 541-42.) Notably, Judge Norris did not make definitive factual findings regarding the precise number and monetary value of iPhones Johnson allegedly stole, on what days those phones were stolen, or XPO's actual loss caused by Johnson. (See ECF No. 31-1 at PageID 561 (findings of fact (2) and (3)).) He likewise did not announce a "direct correlation" between Johnson's "use of . . . the HR office" and XPO's purported loss in November and December 2018. (See id. (finding of fact (4)).)

Based on the record presented, and the distinct circumstances of the current and prior proceedings, the court declines to collaterally estop Johnson from relitigating the

issues identified by XPO. XPO's motion is accordingly denied on that basis.[6]

    3.   <u>Equitable Remedies</u>

        *a.  Constructive Trust*

Finally, the court considers XPO's additional arguments regarding its entitlement to certain equitable remedies, the first being a constructive trust over the contested funds. "In Tennessee, '[a] constructive trust may only be imposed against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, has obtained an interest in property which he ought not in equity or in good conscience retain.'" <u>Dan H. Shell, III, M.D., PLLC v. Danders</u>, No. 2:22-cv-02363-JTF-tmp, 2023 WL 2776734, at *5 (W.D. Tenn. Apr. 4, 2023) (quoting <u>Story v. Lanier</u>, 166 S.W.3d 167, 185 (Tenn. Ct. App. 2004)). "Put another way, '[u]nder Tennessee law, in order for a constructive trust to be created, there must be proof of a wrongful act, specific property acquired by a wrongdoer, which is traceable to wrongful behavior, and an equitable reason why the party holding the property should not be allowed to keep it.'" <u>Id.</u> (quoting <u>In re Hicks</u>, 176 B.R. 466, 471 (W.D. Tenn. 1995)).

---

[6]While XPO is correct that Judge Norris did find by a preponderance of the evidence that Johnson was a fiduciary, such a finding does not entitle XPO to summary judgment on its claim to the seized funds.

Here, although it is uncontested that Johnson admitted to stealing from XPO in December 2018, XPO has not demonstrated beyond "genuine dispute" that the $368,816 at issue is traceable to that conduct or any other wrongful behavior by Johnson. Fed. R. Civ. P. 56(a). Rather, the record before the court suggests not only that XPO and Johnson continue to dispute how Johnson obtained the funds, but also that Judge Norris had "no idea where that money came from." (ECF No. 30-6 at PageID 507.) XPO is not entitled to a constructive trust as a matter of law, and the court accordingly denies summary judgment on that basis.

b.   *Equitable Lien*

Next, XPO argues that "the facts of this case mandate that the Court decree an equitable lien in the property at issue in the name of claimant XPO." (ECF No. 31-1 at PageID 563.) "An equitable lien is a right, not recognized at law, to have a fund or specific property, or its proceeds, applied in whole or in part to the payment of a particular debt." Kryder v. Estate of Rogers, 296 F. Supp. 3d 892, 910 (M.D. Tenn. 2017) (quoting Greer v. Am. Sec. Ins. Co., 445 S.W.2d 904, 907 (Tenn. 1969)). To impose an equitable lien over specific property, Tennessee law instructs that "[t]here must be an intent to make the particular property, real or personal, a security for the obligation[.]" Id. (quoting Greer, 445 S.W.2d at 907); see also Edwards v. Underwood, No. E2023-00640-COA-R3-CV, 2025 WL 857303, at *3 n.1 (Tenn. Ct. App. Mar.

19, 2025) (finding that an equitable lien would be inappropriate because, among other reasons, "[the] record lack[ed] clear evidence that the parties intended 'to make the particular property . . . a security for the obligation'" (quoting Greer, 445 S.W.2d at 901)).

XPO appears to argue that the seized funds should be applied to a debt owed by Johnson as a result of his "commit[ing] theft against XPO for which he retained wrongful profits." (See ECF Nos. 31 at PageID 549; 31-1 at PageID 563.) But in accordance with the court's earlier finding, XPO has not established beyond "genuine dispute" that the contested funds were wrongfully obtained by Johnson and is thus not entitled to summary judgment on that ground. See Fed. R. Civ. P. 56(a).

c.    "Unclean Hands" Doctrine

XPO lastly invokes the equitable doctrine of "unclean hands" to assert that Johnson should be precluded from obtaining "any relief whatsoever." (ECF No. 31-1 at PageID 564.) XPO points to three facts that it believes warrant this result: first, Johnson "pled guilty . . . to theft during three specific dates"; second, Johnson "filed a fraudulent worker's compensation claim against XPO after he was caught red-handed"; and third, Johnson's alternative explanation for how he obtained the contested funds was through illegal sports gambling. (Id.) According to XPO,

"[a]warding Johnson the funds at issue . . . [would] permit[] him to profit from illegal activity." (Id.)

"The doctrine of unclean hands is a maxim of equity that allows a court 'to decline to grant relief to parties who have willfully engaged in unconscionable, inequitable, immoral, or illegal acts with regard to the subject matter of their claims.'" Williams v. Hirsch, No. M2016-00503-COA-R3-CV, 2018 WL 2383612, at *7 (Tenn. Ct. App. May 25, 2018) (quoting In re Estate of Boote, 265 S.W.3d 402, 417 (Tenn. Ct. App. 2007)). "The application of the doctrine of unclean hands is within the [trial] court's discretion[.]" Fuller v. Cmty. Nat'l Bank, No. E2018-02023-COA-R3-CV, 2020 WL 1485696, at *5 (Tenn. Ct. App. Mar. 27, 2020) (quoting Spirit Broadband, LLC. V. Armes, No. M2015-00559-COA-R3-CV, 2017 WL 384248, at *5 (Tenn. Ct. App. Jan. 27, 2019)). Still, the doctrine "must be confined to the particular matter in litigation and the conduct complained of must have injured the party making the complaint." Id. at *4 (quoting Williams, 2018 WL 2343612, at *7).

The court finds XPO is not entitled to summary judgment under the doctrine of unclean hands. First, XPO's reference to Johnson's purportedly fraudulent worker's compensation claim is irrelevant to the "particular matter in [this] litigation"——that is, XPO and Johnson's competing claims to the contested $368,816. Id. Second, as explained above, XPO has not established beyond dispute that

- 30 -

Johnson's possession of the seized rem can be traced to his unlawful theft from XPO. Third, even if the court were to accept Johnson's prior testimony that he obtained the money via illegal gambling, XPO has not shown, let alone alleged, how Johnson's alleged gambling activity "injured [it as] the party making the complaint." Fuller, 2020 WL 1485696, at *4 (quoting Williams, 2018 WL 2343612, at *7). The court declines to grant summary judgment in favor of XPO on this basis.

### III. CONCLUSION

For the reasons above, Johnson's Motion for Summary Judgment and XPO's Motion to Dismiss are DENIED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge


March 29, 2025
Date